UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERTA COSTA,

    Plaintiff,

vs.                                        Case No. 8:04-cv-2599-T-27MAP

WYETH, INC., *et al.*,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Exclude Testimony of Plaintiff's Expert Elizabeth Z. Naftalis, M.D. (Dkt. 68). For the reasons discussed below, Defendants' motion will be denied.

## Introduction

Roberta Costa ("**Costa**") asserts claims against Wyeth LLC (f/k/a Wyeth, Inc.) and Wyeth Pharmaceuticals, Inc. (collectively, "**Wyeth**") for strict products liability and negligence.[1] Costa contends she developed breast cancer as a result of taking a hormone therapy medication manufactured and marketed by Wyeth (*i.e.*, Prempro).[2] In support of her claims, Costa seeks to introduce the expert testimony of Elizabeth Z. Naftalis, M.D. who has opined that Costa's ingestion

---

[1] The Second Amended Complaint purports to assert claims against Defendants based on strict liability (Count I), negligence (Count II), negligent misrepresentation (Count III), and fraud (Count IV). Plaintiff subsequently abandoned her claim for fraud. *See* Dkt. 61, p. 10. On January 31, 2012, the Court dismissed Plaintiff's claims for negligent misrepresentation and fraud without prejudice and with leave to file a Third Amended Complaint. *See* Dkt. 76. Plaintiff did not timely file a Third Amended Complaint and, therefore, her claims for negligent misrepresentation and fraud are no longer pending before the Court.

[2] Prempro (conjugated estrogen/medroxyprogesterone acetate tablets) is a prescription treatment used after menopause to reduce moderate to severe hot flashes, to treat menopausal changes in and around the vagina, and to help reduce the risk of osteoporosis.

of Prempro was a substantial contributing factor in her development of hormone dependent breast cancer and that, absent her use of Prempro, Costa would not have suffered hormone positive invasive lobular and tubular breast cancers. Defendants seek to exclude the proposed testimony of Dr. Naftalis on various grounds.

Proposed Testimony: Dr. Naftalis is the only specific causation expert proffered by Plaintiff. Dr. Naftalis intends to testify that based on a "differential diagnosis" (i.e., she rules in all possible causes of a disease and then scientifically excludes all but on) to conclude that Prempro caused Plaintiff's breast cancer.

### Applicable Standard

Under Florida law,[3] a defect in a product is a legal cause of injury if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the defect, the damage would not have occurred. *See* Fla. Std. Jury Instr. Civ. 5.2. In order to be regarded as a legal cause of injury, the defect need not be the only cause. A defect may be a legal cause of injury even though it operates in combination with some natural cause (*i.e.*, a pre-existing physical condition) if the defect contributes substantially to producing such injury. *Id.*; *see also Gross v. Lyons*, 763 So.2d 276, 279 (Fla. 2000); *Hart v. Stern*, 824 So.2d 927, 929-30 (Fla. 5th DCA 2002).

In determining the admissibility of expert testimony under Rule 702, Federal Rules of Evidence,[4] "[t]he court serves as a gatekeeper, charged with screening out experts whose methods

---

[3] Because this is a diversity case, Florida's substantive law governs Costa's burden of proof on causation. *McLeod v. Am. Motors Corp.*, 723 F.2d 830, 832 (11th Cir. 1984).

[4] Although the standards for finding causation are governed by Florida law, federal law applies to determine whether the expert testimony proffered to prove causation is sufficiently reliable to submit it to the jury. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (noting that in diversity cases, the Federal Rules of Evidence govern

are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). A determination of admissibility requires findings that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [*v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).[5]

The proponent of expert testimony bears the burden of establishing each requirement by a preponderance of the evidence. *See Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care*, 582 F.3d 1227, 1232 (11th Cir. 2009); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

The focus of the *Daubert* analysis is "on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "Thus, the proponent of the [expert] testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994)). "The evidentiary requirement of reliability is lower than the merits standard of correctness. *Daubert* states that a

---

the admissibility of evidence in federal court).

[5] Wyeth does not challenge Dr. Naftalis' qualifications to render an expert opinion, but rather argues that her methodology is not reliable under *Daubert*.

judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' *i.e.*, if it is based on the methods and procedures of science." *In re Paoli*, 35 F.3d at 744. Hence "in most cases, objections to the inadequacies of a [scientific] study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)).

## Discussion

Dr. Naftalis purports to use a differential diagnosis methodology to conclude that Prempro was "a substantial contributing factor in [Costa's] development of hormone dependent breast cancers." While a differential diagnosis can provide a valid basis for a medical causation opinion, "an expert does not establish the reliability of [her] techniques or the validity of [her] conclusions simply by claiming that [s]he performed a differential diagnosis on a patient." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005). Instead, a court must examine whether the expert correctly applied the differential diagnosis methodology. *Guinn v. AstraZenaca Pharms.*, 602 F.3d 1245, 1253 (11th Cir. 2010). The reasonableness of applying this approach, along with the validity of the expert's particular methodology for analyzing the data and drawing conclusions from the data, will determine whether the differential diagnosis is reliable. *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1195 (11th Cir. 2010).

A differential diagnosis requires "determining the possible causes for the patient's symptoms and then eliminating each of the potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Guinn*, 602 F.3d at 1253 (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999). At the first of the

two steps, the "rule in" step, the expert must compile a comprehensive list of theories that could explain the patient's symptoms. *Hendrix*, 609 F.3d at 1195; *McClain*, 401 F.3d at 1253; *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003). "Expert testimony that rules in a potential cause [of a patient's symptoms or mortality] that is not so capable is unreliable." *McClain*, 401 F.3d at 1253 (quoting *Clausen*, 339 F.3d at 1158). This is because "a fundamental assumption underlying [differential diagnosis] is that the final, suspected 'cause' ... must actually be capable of causing the injury." *Id.* (alteration in original).

At the second step of a differential diagnosis, the "rule out" step, the expert must at least consider the other causes that could have solely given rise to plaintiff's injury. *Guinn*, 602 F.3d at 1253. However, the expert "need not rule out all possible alternative causes" for her differential diagnosis to be reliable. *Id.* ("[I]t would be unreasonable to require [the expert] to conclusively rule out all alternative causes."); *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181 (6th Cir. 2009); *Westberry*, 178 F.3d at 265; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999); *In re Mentor Corp.*, 711 F.Supp.2d 1348, 1372 (M.D. Ga. 2010). *But see Hendrix*, 609 F.3d at 1195 ("[T]he expert must eliminate all causes but one.").

Wyeth first argues that Dr. Naftalis had no basis for "ruling in" Prempro as a potential cause of Costa's breast cancer because there is no evidence that Costa's use of Prempro raised her hormone levels to the "undefined threshold" that in Dr. Naftalis' opinion is required to promote cancer growth. Specifically, Wyeth contends that there is no evidence as to Costa's actual hormone levels after she started taking Prempro and there is no evidence that Costa's use of Prempro actually increased her hormone levels (*i.e.*, by relieving her menopausal symptoms). In short, Wyeth

contends that the only conceivable justification for "ruling in" Prempro as a potential cause of Costa's breast cancer was the temporal relationship between Prempro's use and the cancer diagnosis.

While Wyeth is correct that the evidence in the record is, at best, contradictory as to whether Costa suffered menopausal symptoms and the impact of her Prempro use on hormone levels, there is sufficient evidence to support Dr. Naftalis' conclusion that Costa was hormone deficient prior to using Prempro. Based on her conclusion that Costa was hormone deficient, Dr. Naftalis properly considered whether Costa's Prempro use increased her naturally occurring hormone levels so as to promote the development of breast cancer. *See Scroggin v. Wyeth*, 586 F.3d 547, 566-67 (8th Cir. 2009), *cert. denied*, 130 S.Ct. 3467 (2010).[6]

Wyeth also argues that Dr. Naftalis erred in failing to "rule in" genetics as a possible cause of Costa's breast cancer. In support, Wyeth notes that Dr. Naftalis' opinion discounting the role of genetics is inconsistent with the fact that Costa developed breast cancer in her other breast even after she began taking anti-estrogen medication. In short, Wyeth contends that Dr. Naftalis' failure to give serious consideration as to whether Costa was genetically predisposed to develop hormone dependent breast cancer without a threshold level of hormone levels undermines Dr. Naftalis' claim that she performed a proper differential diagnosis.

Contrary to Wyeth's contention that Dr. Naftalis failed to consider other possible causes of Costa's breast cancer (including genetics), a review of Dr. Naftalis' expert report reveals that she recognized and properly considered various factors before concluding "within a reasonable degree

---

[6] It is true that the evidence relied on by Dr. Naftalis to conclude that Costa was hormone deficient prior to taking Prempro is less persuasive than the evidence she relied upon in forming her opinion offered in *Scroggin* and other similar litigation. This distinction, however, properly goes to the weight to be afforded Dr. Naftalis' opinion rather than its admissibility. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341.

of medical certainty [] that Roberta Costa's ingestion of E+P was a substantial contributing factor in her development of hormone defendant breast cancers."[7] As noted by the Eighth Circuit in *Scroggin*, "[a]lthough not necessary to the formation of her opinion, Dr. Naftalis addressed the known causes of breast cancer and possible risk factors. Wyeth ... argue[s] that this review was insufficient, but Dr. Naftalis's 'explanations as to conclusions not ruled out went to weight and not admissibility.'" *Scroggin*, 586 F.3d at 566 (citations omitted); *see also Westberry*, 178 F.3d at 265-66 ("The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' ... unless the expert can offer 'no explanation for why she has concluded [an alternative cause offered by the opposing party was not the sole cause.'") (internal citations omitted).

Wyeth also argues that Dr. Naftalis erred in "ruling out" Costa's endogenous hormones as the cause of her breast cancer. Specifically, Wyeth contends that because Dr. Naftalis was unable to classify Costa as "hormone deficient" prior to taking Prempro there was no basis for Dr. Naftalis' conclusion that Costa's endogenous estrogen was not the cause of her cancer. This is particularly true, argues Wyeth, given that Dr. Naftalis recognized the significant role endogenous hormones may play in the development of breast cancer in obese women. In short, Wyeth contends that Dr. Naftalis' opinion that Costa's endogenous hormone levels were not sufficient to "promote" her breast cancer is pure speculation.

Again, Wyeth's argument goes to the weight to be afforded Dr. Naftalis' testimony rather than its admissibility. As noted, there is sufficient evidence to support Dr. Naftalis' conclusion that

---

[7] Dr. Naftalis noted that Costa had no family history of breast cancer, but considered other factors including, *inter alia*, the fact that Costa had dense breasts and was obese – both of which may have increased her endogenous hormone levels and, thus, her susceptibility to breast cancer.

Costa was hormone deficient and a review of her expert opinion reveals that Dr. Naftalis considered various factors (including Costa's obesity and endogenous estrogen) before concluding that Prempro was a substantial contributing factor in Costa developing breast cancer. While a differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation, Dr. Naftalis has offered a reasonable explanation as to why she concluded that an alternative cause was not the sole cause of Costa's breast cancer. *Guinn*, 602 F.3d at 1245.[8]

Finally, Wyeth argues that even if Dr. Naftalis performed a proper differential diagnosis by evaluating all known potential causes of Costa's breast cancer, the very existence of unknown causes renders the use of a differential diagnosis an inappropriate methodology to determine the specific cause of Costa's breast cancer. Similarly, Wyeth argues that Dr. Naftalis' use of a differential diagnosis is unreliable because it is not readily accepted in the relevant medical community, has not been tested or peer reviewed, and was invented solely for the purpose of rendering an opinion for use in this litigation.

Wyeth's argument relating to the existence of unknown causes and the reliability of the differential diagnosis methodology is without merit. *See, e.g., Scroggin*, 586 F.3d at 565-66 (upholding use of differential diagnosis as a reliable methodology for determining the cause of plaintiff's breast cancer); *Hines v. Wyeth*, No. 2:04-0690, 2011 WL 2680718, at *4 (S.D. W.Va. July 8, 2011) (same); *Rivera Adams v. Wyeth*, No. 03-1713, 2010 WL 5072061, at *4 (D. P.R. Dec. 3,

---

[8] Dr. Naftalis opined that while Costa was obese with symptoms, she did not have a high risk of developing breast cancer under the Gail model and, therefore, prior to starting hormone therapy she had a minimal susceptibility for developing breast cancer. With respect to her dense breasts, Dr. Naftalis opined that Costa's breasts were *susceptible* to developing breast cancer.

2010) (same). Moreover, Dr. Naftalis properly applied the methodology by sufficiently establishing the necessity of hormones in the development of Costa's breast cancer and giving adequate consideration to alternative causes and risk factors. Indeed, Dr. Naftalis opined: "Whatever other factors may have played a role in cancer development, the cancer would not have developed to clinical significance in the absence of hormones."

## Conclusion

In sum, Wyeth's challenges to Dr. Naftalis' testimony go to the weight, not admissibility, of her testimony. *See Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341; *see also Allison*, 184 F.3d at 1311-12 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (quoting *Daubert*, 509 U.S. at 596). While a district court must act as a gatekeeper to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable," *Daubert*, 509 U.S. at 589, the court is not meant to "supplant the adversary system or the role of the jury."

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Exclude Testimony of Plaintiff's Expert Elizabeth Z. Naftalis, M.D. (Dkt. 68) is **DENIED**.

**DONE AND ORDERED** in chambers on this 28th day of March, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record